**Howard Floyd TUCKER, Appellant,**

v.

**Charles L. WOLFF, Jr., Warden, Nevada State Prison, Appellee.**

No. 78–1047.

United States Court of Appeals, Ninth Circuit.

Aug. 31, 1978.

Howard Floyd Tucker, pro se.

Robert List, Atty. Gen., Carson City, Nev., for appellee.

Before GOODWIN and WALLACE, Circuit Judges, and THOMPSON *, District Judge.

GOODWIN, Circuit Judge:

In a Nevada state trial, Tucker was convicted of burglary and his conviction was affirmed on appeal. *Tucker v. State*, 92 Nev. 486, 553 P.2d 951 (1976). In the district court, Tucker petitioned for a writ of habeas corpus. A magistrate recommended against granting the writ. The district court adopted the magistrate's recommendation, and, without an evidentiary hearing, denied relief. Tucker appeals. Because two issues require further consideration by the district court, we vacate its judgment and remand the case.

## I. SPEEDY TRIAL

Tucker was arrested in a business establishment in Carson City, Nevada, in the early hours of August 11, 1974. He has been in custody continuously since that time. After a preliminary hearing, he was arraigned on September 9, 1974, and pleaded not guilty. The court set his trial for May 20, 1975. Disregarding the month between arrest and arraignment, Tucker was in custody for nearly nine months awaiting trial.

The state asserts that the cause of the delay was the trial court's congested docket. Tucker claims that, regardless of cause, the delay constituted a *per se* denial of his Sixth Amendment right to a speedy trial. This circuit has not adopted a *per se* time frame for state prisoners. *Arnold v. McCarthy*, 566 F.2d 1377 (9th Cir. 1978); *Paine v. McCarthy*, 527 F.2d 173, 176 (9th Cir. 1975). However, the facts alleged by Tucker require careful evaluation under the test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Because of a conflict with the public defender, Tucker eventually secured private counsel. At his counsel's suggestion, on May 19, 1975, he sought a continuance for a psychiatric examination. He says that in aid of his motion for a continuance he signed a statement waiving any speedy trial claims after May 19, but that he reserved his claim based on the delay before May 19. The alleged statement is not in the record. Tucker says his retained counsel must have it.

In any event, Tucker, after May 19, 1975, began asserting the speedy trial claim in the state court. The magistrate found that he may have done so as early as June 10, but the facts on this point have not yet been resolved.

The state trial court refused to accept Tucker's speedy-trial petitions, because they did not come through his attorney. Finally, the Nevada Supreme Court ordered the tri-

* The Honorable Gordon Thompson, Jr., United States District Judge for the Southern District of California, sitting by designation.

al court to hold a hearing on the speedy-trial issue. At that hearing, the trial court found that the delay was excused because it was the result of the court's congested calendar and of Tucker's dilatory motions. The magistrate agreed with the state court.

On appeal Tucker carefully limits his claim. He recognizes that he is partially chargeable with the delay after May 19. He therefore asserts that the delay from his arrest until May 19 in itself violated his rights. The district court did not, on the record, analyze this particular delay according to the criteria the Supreme Court has established: length of the delay, reason for the delay, the defendant's assertion of the right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. 2182.

█ Since Tucker was incarcerated pending trial, his speedy-trial right began running with his arrest. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The total delay was therefore about 280 days—a long wait for a trial date in a simple burglary case. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy case." *Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192.

█ The asserted reason for the delay, a congested docket, is a lesser evil than delay from deliberate prosecutorial choice. However, all delay not caused by the defendant remains the government's responsibility. *Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. 2182. A state government's allocation of resources plays a major role in creating congested dockets, and it is unfair to require defendants to bear the entire burden that results from the government's fiscal decisions. There must be a point at which delay due to a congested docket becomes so unacceptable that by itself it violates the right to a speedy trial. That point comes sooner when a defendant is incarcerated awaiting trial.[1]

Tucker alleges, with some specificity, that other defendants arrested after he was arrested were tried before he was tried. If true, those facts might not be controlling, but they would raise questions about the reasons for and necessity of Tucker's delay. The district court did not examine this point. It should do so on remand. Early trials for others prompt a legitimate question about the validity of the docket-congestion excuse. As the record now stands, the length of the delay and the question about the good reasons for it facially appear to weigh in Tucker's favor.

Tucker's claim that he demanded a speedy trial is less clear. The magistrate found that Tucker's earliest formal assertion was in late July of 1975 and the earliest informal assertion may have been June 10. The magistrate based these findings on the record before him, not on an evidentiary hearing. We find ambiguities in that record, however, and cannot say that it clearly supports the magistrate's findings. For example, the record includes a letter of May 22 from the state judge to Tucker, returning his application for a writ of habeas corpus. There is no copy of that application in the record, but Tucker's arguments indicate that it may have contained a speedy-trial claim.

Tucker also alludes to conflicts with the public defender. We do not know whether his delay in asserting the speedy-trial right may have been the result of these conflicts. The public defender may have acquiesced in the delay; we do not know whether he did so with Tucker's knowledge or consent. This is another factual matter that could have been probed in an evidentiary hearing.

█ While failure to assert the right does not preclude relief, it may shed light on whether the delay prejudiced the defendant. On the other hand, an attorney's failure to inform the defendant adequately

---

1. The state credited Tucker on his ultimate sentence with the time served before trial. This credit does not wholly erase the effect of the incarceration on his speedy-trial claim. The right to a speedy trial is the right of an ac-cused, who is presumed to be innocent, not of a convict. A defendant who is acquitted receives little comfort from "credit" for his time behind bars; but his right is no greater or no less than that of one who is convicted.

may help explain a failure to object. *Barker v. Wingo*, 407 U.S. at 523–29, 532, 92 S.Ct. 2182. We do not now have the necessary facts to rule on this aspect of Tucker's claim. The district court on remand should give the parties an opportunity to develop them.[2]

Tucker asserts, without saying how, that the delay prejudiced his defense. Some prejudice, however, arises from incarceration for the period of the delay. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. 2182. The district court also should consider incarceration when it weighs the relevant factors on remand.

■■■ Since there are unresolved factual questions, we remand the speedy-trial claim to the district court to conduct an evidentiary hearing and find the relevant facts. It should then carefully weigh all the criteria listed by the Supreme Court and determine whether the delay violated Tucker's right to a speedy trial. The court should consider only the period before May 19, 1975, when none of the delay was of Tucker's own contrivance. As we have already indicated, the length of the delay in itself suffices to make Tucker's claim substantial. If the court finds a violation of Tucker's right, the remedy is a writ ordering his unconditional release from confinement on this conviction. *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

## II. BURDEN OF PROOF

If the district court finds no violation of Tucker's speedy-trial right, it should then examine his argument that the state used an unconstitutional presumption in procuring his conviction.

Tucker was convicted of violating Nev. Rev.Stat. 205.060(1), which defines burglary as entering any of a number of structures "with intent to commit grand or petit larceny, or any felony * * *."

At the trial the court instructed the jury to follow the presumption created in Nev. Rev.Stat. 205.065, that anyone who unlawfully enters one of those structures does so "with intent to commit grand or petit larceny or a felony therein, unless such unlawful breaking and entering or unlawful entry shall be explained by testimony satisfactory to the jury to have been made without criminal intent." Tucker argues that this statute unconstitutionally shifts to the defendant the burden on an element of the offense.

■■■ The magistrate rejected Tucker's constitutional claim for two reasons, both of which were inadequate. First, he relied on *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), to say that the presumed fact had been shown beyond a reasonable doubt to follow from the proven fact. The problem with this approach is that *Barnes* deals with statutory inferences, not statutory presumptions. An inference merely allows a jury to draw a conclusion if it thinks it proper, while a presumption requires it to do so unless the defendant presents an adequate rebuttal. An inference helps to determine what evidence is sufficient to meet the prosecutor's burden on a particular element; unlike this presumption, it does not shift that burden to the defendant.

■■■ The magistrate also said that the use of the presumption was harmless error. We disagree. Tucker's principal defense at the trial was that he was too intoxicated to have formed the intent necessary to commit the crime of burglary. He presented psychiatric and other evidence to support this defense. The burden on Tucker to rebut the presumption of intent may have prompted the jury's decision. If there was error, its effect upon the jury should be evaluated in light of *United States v. Valle-Valdez*, 554 F.2d 911, 915 (9th Cir. 1977),

---

**2.** The magistrate suggested that Tucker's delay in asserting his speedy-trial right may have constituted a waiver of it. Tucker himself did not acquiesce in the delay, implicitly or explicitly. The Supreme Court specifically rejected the argument that a failure to assert the right was in itself a waiver. *Barker v. Wingo*, 407 U.S. at 528, 92 S.Ct. 2182. Its ruling "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial." 407 U.S. at 529, 92 S.Ct. at 2191.

and *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Because of the inappropriate harmless-error recommendation, we are not certain that the district court ever passed upon the constitutionality of the statute. We therefore do not rule on the point, pending the district court's opinion. If the district court reaches the issue, it should carefully consider the validity of Nev.Rev.Stat. 205.065 in the light of *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); and *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

None of Tucker's other claims merits federal habeas relief.

Vacated and remanded.