**James Leroy CAIN, Petitioner-Appellee,**

v.

**Steve SMITH, Steven L. Beshear, Respondent-Appellant.**

**No. 81–5145.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1981.

Decided July 7, 1982.

Michael R. Beiting, James L. Dickinson, Asst. Attys. Gen., Frankfort, Ky., for respondent-appellant.

Rodney McDaniel, Asst. Public Advocate, Frankfort, Ky., for petitioner-appellee.

Before KEITH, MERRITT and JONES, Circuit Judges.

KEITH, Circuit Judge.

The United States District Court for the Western District of Kentucky issued a writ of habeas corpus for James Leroy Cain, the petitioner-appellee, on the ground that the 11½ months delay from the date of his arrest to trial violated his constitutional right to a speedy trial. We hold that the delay in this "mundane garden variety" robbery is more than sufficient to trigger further inquiry into the cause for the delay. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

It appears that the prosecution did not have a prima facie case against Cain during the initial seven months of his pretrial incarceration. Moreover, the prosecution obtained five continuances over the speedy trial objections of Cain. The present rec-ord, however, is fragmented and does not contain the court's rationale for granting the continuances. Therefore, we are unable to engage in the delicate balancing required to determine whether the lengthy delay constitutes a constitutional violation. *See Barker*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. Accordingly, we remand this action to the district court for further fact finding.

Facts

On November 1, 1975, two armed men robbed a Kroger grocery store in Louisville, Kentucky. A short time later, James Leroy Cain ("Cain") and Clarence Morrow ("Morrow") were arrested in the section of the city where the robbery occurred. Cain and Morrow were incarcerated immediately. Several days later, Cain filed a motion to dismiss claiming that he had been denied a speedy arraignment. The court overruled the motion. On November 10, 1975, the Jefferson County Grand Jury indicted Cain, Morrow, Robert Hayes, and his father, William R. Hayes for first degree robbery and first degree wanton endangerment. Bond for each defendant was set at $100,000.

The first trial date was set for December 12, 1975. On that date, Cain indicated that he was ready for trial. The trial, however, was postponed until March 23, 1976 on the Commonwealth's motion. The record does not indicate the basis on which the Commonwealth sought the continuance or the Court's rationale for granting the motion.

On March 23, 1976, the second trial date, Cain again announced that he was ready for trial. He also argued that "any further continuances would deny his [constitutional] right to a speedy trial." The case was again postponed at the Commonwealth's request. Cain objected, but the trial court denied Cain's speedy trial motion. Apparently, this second continuance was granted because a witness failed to appear. However, the record neither identifies the absent witness nor indicates his relative importance to the case.

The third date set for trial was April 23, 1976. Again, Cain was ready for trial. The

trial, however, did not occur on April 23. At the Commonwealth's request, the Court postponed the trial until June 9, 1976. The record is not clear how the Commonwealth obtained a third continuance over the speedy trial objections raised by Cain.

Prior to the second continuance on March 23, the bonds for William and his son, Robert Hayes, were reduced from $100,000 to $2,000. The bond reductions were part of the Commonwealth's efforts to obtain the Hayeses' testimony.[1] The Commonwealth candidly admits that it could not prove Cain guilty unless William Hayes testified against Cain.[2] *See* Brief of Commonwealth at 23 n.4. The Commonwealth also admits that the delay from November to June was caused in part by the continuing negotiations to encourage Robert and William Hayes to testify against Cain and Morrow. Apparently, William Hayes did not agree to testify against Cain until seven months after Cain was incarcerated. On June 9, 1976, the Commonwealth consummated the deal with William and Robert Hayes.[3]

That same day, Cain and the Commonwealth announced that they were ready for trial. However, the trial was not held. Morrow's counsel sought a continuance on the ground that the potential jurors had seen his client being led into the court in jail clothes. Counsel for Cain also objected due to Morrow's association with Cain. The court overruled both objections. Jury selection resumed immediately following the in-chambers discussion. Jury selection was halted a short time later. The precise reason for the interruption does not appear in the record.[4]

Counsel retired to the judge's chambers. In chambers, Morrow sought a continuance while Cain sought a speedy trial. Cain explained that he was not attempting to "double play" the court and that he would not strenuously object to a continuance if his bond was reduced. The court replied, "I'm not going to let either one of them out, I'll tell you that right now. They're both going to stay in jail." Moments later, the court mentioned severing the cases of Cain and Morrow, but concluded that the prosecution would prefer a joint trial. The Commonwealth agreed, and amplified the Court's comment. Cain immediately renewed his motion for bond reduction. The court replied:

> Well, I'm not saying you can't make the motion, and I have to go through a hearing, but I say the way I feel now, it won't be reduced because I've already had two hearings. Maybe you know something I don't, but the way I feel right now, these guys are going to stay in jail until we try them, if it's next year.

Undaunted, Morrow requested a bond hearing at the earliest possible date. The prosecutor suggested that the hearing be held immediately. Cain also sought an immediate ruling on his bond reduction request. He reminded the Court that it had previously indicated that a bond reduction would be given serious consideration if the trial were postponed.

The court rejected counsel's suggestions and continued the case. Cain immediately objected to the continuance on speedy trial grounds. The court recognized the objection, but stated that "the Commonwealth is entitled to try both [Cain and Morrow] at

---

1. Cain was unsuccessful in his attempts to have his bond reduced in two bond hearings prior to June 9, 1976. Subsequent efforts to have his bond reduced were also unsuccessful.

2. The Commonwealth's brief states: "Proof of guilt against Cain was contingent upon the prosecution securing the testimony of Mr. Hayes as a witness for the state." Brief of Commonwealth at 23, n.4.

3. The Commonwealth reduced the charges against William Hayes from first degree rob-

bery and wanton endangerment to misdemeanor criminal facilitation. The prosecution further agreed to recommend that Hayes receive probation. In exchange, William Hayes agreed to plead guilty to the reduced charges and testify against Cain and Morrow. It is unclear what, if anything, Robert Hayes received as part of the Commonwealth's deal. However, Robert Hayes also pled guilty.

4. The trial was not postponed due to Morrow's physical condition.

the same time." The court set June 18, 1976, as the date for the bond hearing.

The prosecutor subsequently blamed the continuance on Morrow. Allegedly, Morrow stated that he would strike sufficient jurors so that the case could not be tried that day.[5] Morrow, however, denied making the statement. The court exonerated Cain, but did not find that any party caused the failure to complete jury selection. All parties acknowledged that any party could create a shortage of jurors by using all of his preemptory challenges. Following this exchange, the prosecution renewed his request for an immediate trial. However, the court overruled Cain's speedy trial motion and continued the case until October. For some unexplained reason, the court did not follow its original plan to select additional jurors and conduct the trial the following morning.

Subsequently, the court proposed October 4, as the new trial date. Cain objected and requested an earlier date.[6] The case was continued until September 13, 1976. The record does not indicate what transpired at the bond hearing held on June 18, 1976.

On September 13, 1976, the trial was postponed for the fifth time. The reason the continuance was granted does not appear in the record. The trial was rescheduled for October 13, 1976. On that date, Cain filed a motion to dismiss for failure to grant a speedy trial. The court denied the motion. Cain was ultimately tried on October 13, approximately 11½ months after his arrest.

Prior to his arrest, Cain was married and lived with his wife and two children in Chicago, Illinois. He was employed as a dental technician. He had no prior felony convictions.

At trial, the Commonwealth did not present one eyewitness who observed Cain's alleged involvement in the actual robbery. In fact, Rickie Mills was the only Kroger employee to place Cain anywhere near the Kroger store. He simply testified that Cain was in the store's parking lot five hours before the robbery. A police officer testified that Cain and Morrow were together several minutes after the robbery. William Hayes, however, provided the crucial testimony. He testified that minutes before the robbery, Cain and Morrow were in the "getaway car" in the Kroger parking lot.[7]

The jury convicted Cain. Cain was sentenced to 20 years. Cain appealed his conviction to the Kentucky Supreme Court. The Kentucky Supreme Court affirmed the conviction on July 29, 1977. The court found that the Commonwealth had not deliberately delayed Cain's trial. The court acknowledged that Cain had diligently asserted his right to a speedy trial and regretted that he had "endured the oppression of languishing in jail for over 11 months." Nevertheless, the court concluded that the delay was not so unreasonable as to violate his constitutional rights.

On June 8, 1980, Cain filed a writ of habeas corpus in the district court contending that his right to a speedy trial had been denied. The district court concluded that 1) it was not possible to assume that the Commonwealth lacked some questionable motive; 2) the delay was disproportionate to the type of crime charged; 3) Cain was persistent and diligent in requesting a speedy trial; and 4) Cain was prejudiced by the 11½ month pretrial incarceration. Subsequently, the district court issued a writ of habeas corpus directing the Kentucky state court to vacate Cain's sentence and dismiss the indictment. The State of Kentucky

---

5. The court granted the litigants more preemptory challenges than jurors present in the jury pool that day. The court was confident that the trial could be recessed and jury selection completed the following morning if there were insufficient jurors.

6. Cain opined that the trial should only last two days. The court disagreed stating, "If we got started at a reasonable time, it shouldn't last

that long. I'll try it the 13th, O.K.? The first day back, September 13th."

7. It should be noted that the facts contained in the opinion are only a brief summary of the evidence produced at trial. Cain was arrested in the apartment where the money from the robbery was recovered.

perfected this appeal. Presently Cain is on parole.

## I.

The Kentucky Supreme Court held that the 11½ month delay between arrest and trial did not violate Cain's constitutional right to a speedy trial. The United States District Court for the Western District of Kentucky disagreed. The district court granted Cain federal habeas corpus relief pursuant to 28 U.S.C. § 2254 to redress the violation of his constitutional right to a speedy trial. The Commonwealth characterizes the district court's judgment as "simply rejecting the state appellate court findings." The district court allegedly erred in failing to credit the Kentucky Supreme Court's determination with the "presumption of correctness" mandated by Section 2254(d).[8] We disagree.

■ Section 2254(d) provides that "a determination after a hearing on the merits of a factual issue, made by a state court of competent jurisdiction ... [and] evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct," unless the petitioner for habeas corpus can establish one of the enumerated statutory exceptions. In *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the Supreme Court held that the factual determinations of state trial courts as well as state appellate courts were entitled to the "presumption of correctness." *Id.* at 546–47, 101 S.Ct. at 768. The *Sumner* holding and Section 2254(d), however, apply only to factual determinations made by state courts.

■ State court determinations which are mixed questions of fact and law[9] or

**8.** 28 U.S.C. § 2254(d):

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, perti-

nent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

**9.** In *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the court distinguished issues of fact from mixed questions of fact and law as follows: "By 'issues of fact' we mean to refer to what are termed basic, primary, or historic facts; facts 'in the sense of a recital of external events and the credibility of their narrators ...' *Brown v. Allen*, 344 U.S. 443, 506, 73 S.Ct. 397, 446, 97 L.Ed. 469 (opinion of Mr. Justice Frankfurter). So-called mixed questions of fact and law, which require the application of a legal standard to the historic-fact determinations, are not facts in this sense." *Id.* at 309, n.6, 83 S.Ct. at 755.

pure questions of law are not governed by Section 2254(d). *See e.g., Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980); *Mata v. Sumner,* 649 F.2d 713, 716 (9th Cir. 1981); *Harris v. Oliver,* 645 F.2d 327, 330, n.3 (5th Cir.) *cert. denied,* 454 U.S. 1109, 102 S.Ct. 687, 70 L.Ed.2d 650 (1981). Therefore, state court application of constitutional legal principles to historic facts are freely reviewable by a federal court in a habeas action.

▮ In the present case, the facts relied upon by the Kentucky Supreme Court were not only granted the presumption of correctness, but accepted without question by the district court. The Commonwealth has failed to demonstrate that the state court's factual determinations were not fully accepted. Moreover, the determination of whether the pre-trial delay constituted a speedy trial violation is not, as the Commonwealth contends, a factual issue. It is well settled that the question of whether the constitutional right to a speedy trial has been violated is an issue of law. *See e.g., Jones v. Morris,* 590 F.2d 684, 686 (7th Cir.), *cert. denied,* 440 U.S. 965, 99 S.Ct. 1513, 59 L.Ed.2d 780 (1979). We hold that the district court did not err in determining that it could review the Kentucky Supreme Court's determination that Cain's constitutional right to a speedy trial had not been violated.

▮ The district court did err, however, in granting summary judgment on the present record. The district court found that "the record is so fragmentary" that it is difficult to determine the motives of the prosecution and further "that the reason for the delay is neither evidence in nor inferable from the record." Nevertheless, the district court determined that "an evidentiary hearing would be unavailing," and said "we will decide the issues based on the

record before us." We conclude that the state court did not adequately develop many facts relevant to an accurate determination of whether there has been a violation of the right to a speedy trial. The district court, therefore, should conduct an evidentiary hearing on the speedy trial issues hereinafter discussed. Summary judgment should not be granted where it appears, as it does on this fragmented record, that "the petitioner's allegations, if proved, would establish his right to relief." [10] *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963). *See Jones,* 590 F.2d at 686. The alleged constitutional violation in the present case is not so self-evident that an evidentiary hearing was unnecessary.

## II.

### Constitutional Right to a Speedy Trial

▮ The right to a speedy trial is "fundamental", that is, "it is one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina,* 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1 (1967). *Accord, Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The right to a speedy trial is guaranteed by the Sixth Amendment and is applicable in state criminal proceedings through the Fourteenth Amendment. *See, e.g., Klopfer,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1; *Jones,* 590 F.2d at 685; *Atkins,* 644 F.2d 543 (6th Cir. 1981).

The speedy trial right is "intended to spare an accused those penalties and disabilities—incompatible with the presumption of innocence—that may spring from delay in the criminal process." *Dickey v. Florida,* 398 U.S. 30, 42, 90 S.Ct. 1564, 1571, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring). *Accord, Atkins v. Michigan,* 644 F.2d 543, 547 (6th Cir.), *cert. denied,* 452 U.S. 964, 101

---

10. The Commonwealth, as an officer of the court, has a similar duty to evaluate independently the constitutional issues presented in habeas corpus petitions. We admonish the Commonwealth for moving for summary judgment before the district court and later admitting to this court that the case is "a close one" and that there are material unresolved factual issues in the record. The Commonwealth's behavior in the instant case represents, at best, a material misstatement of fact to the district court. Behavior of this type wastes precious judicial resources and distorts the adversarial process.

S.Ct. 3115, 69 L.Ed.2d 975 (1981). Societal interests are also protected by the speedy trial clause.[11] "The public is concerned with the effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. Just as delay may impair the ability of the accused to defend himself, so it may reduce the capacity of the government to prove its case." *Dickey*, 398 U.S. at 43, 90 S.Ct. at 1571.

■ The speedy trial right has an amorphous quality which requires courts to "approach speedy trial cases on an ad hoc basis." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Id.* at 522, 92 S.Ct. at 2188. In *Barker*, the Supreme Court identified four factors which are particularly probative in evaluating whether the right to a speedy trial has been violated: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192.[12] We will examine each factor separately.

A. Length of Delay

■ The length of the delay for speedy trial purposes is measured from the earlier of the date of indictment or the date of arrest. *See, e.g., United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); *Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 304, 46 L.Ed.2d 205 (1975). The length of the delay is to some extent a triggering mechanism. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. "[U]ntil there is some delay which is pre-

sumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* The passage of a fixed period of time does not create a presumption of prejudice. Whether the delay is presumptively prejudicial is principally determined by the nature and complexity of the crime. *See United States v. Baumgarten*, 517 F.2d 1020, 1024 (8th Cir.) *cert. denied*, 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111 (1975). In *Barker*, the Supreme Court held that the "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192.

■ In the present case, Cain was arrested on November 1, 1975. Cain's trial, however, did not occur until 11½ months later on October 13, 1976. The trial was simple, and much of the evidence was eyewitness testimony. The district court found that there were "no serious problems of marshalling evidence or setting trial strategy." We hold that such a lengthy delay for this "mundane garden-variety" robbery case is presumptively prejudicial. *See, e.g., United States v. Simmons*, 536 F.2d 827, 831 (9th Cir.) *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976). (6 month delay sufficient to trigger further balancing for forging and uttering treasury check); *United States v. Johnson*, 579 F.2d 122 (1st Cir. 1978) (8 month delay sufficient for bail jumping); *United States v. Fay*, 505 F.2d 1037, 1039 (1st Cir. 1974) (9 month delay sufficient for conspiracy to distribute cocaine); *Tucker v. Wolff*, 581 F.2d 235, 237 (9th Cir. 1978) (9 month delay "a long wait for simple burglary case"); *United States v.*

---

11. In *Barker*, 407 U.S. at 519–20, 92 S.Ct. at 2186, the societal interests in providing a speedy trial were discussed at length. The Supreme Court stated that speedy trials minimize the ability of defendants to manipulate the system, reduce the risk of further crimes being committed by defendants on bond, enhance the possibility of rehabilitation, minimize prison overcrowding, reduce governmental costs, and reduce the destructive effect lengthy incarceration has on the human character.

12. The four factors enumerated in *Barker* are merely "some of the factors" which courts should consider when resolving a speedy trial claim. *See Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. None of the four factors is either a necessary or sufficient condition to finding a denial of the right to a speedy trial. The test is more suggestive than exhaustive. *See Barker*, 407 U.S. at 533, 92 S.Ct. at 2193; *United States v. Avalos*, 541 F.2d 1100, 1110 (5th Cir. 1976); *United States v. Netterville*, 553 F.2d 903 (5th Cir. 1977).

*Avalos*, 541 F.2d 1100, 1111, n..19 (5th Cir.), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). ("We have in the past routinely applied the *Barker* balancing test even in complex conspiracy cases in which the speedy trial period was thought to be nine or ten months."). In fact, the 11½ month delay in the present case is clearly excessive. This factor will be weighed against the government. *See Jones v. Morris*, 590 F.2d 684, 686 (7th Cir.) (Per Curiam); *cert. denied*, 440 U.S. 965, 99 S.Ct. 1513, 59 L.Ed.2d 780 (1979).

### B. Reasons for the Delay

■■■■ The prosecutor and the court have an "affirmative constitutional obligation" to try the defendant in a timely manner. *See, e.g., Atkins*, 644 F.2d at 547; *Dickey*, 398 U.S. at 38, 90 S.Ct. at 1569; *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). This "constitutional duty" is not satisfied unless "a diligent good-faith effort" has been made to try the defendant promptly. *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973). A prosecutor may not rely upon a *pro forma* notice of readiness after the defendant has sought a speedy trial. *See United States v. Vispi*, 545 F.2d 328, 334 (2d Cir. 1976). Affirmative steps must be taken to ensure that a timely trial occurs. *Id.* Delay which occurs after a speedy trial is demanded should be scrutinized with particular care. *See United States v. Carini*, 562 F.2d 144 (2d Cir. 1977); *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377–78 (2d Cir. 1979). The prosecutor's constitutional duty is particularly compelling when the defendant is incarcerated. *See United States v. Calloway*, 505 F.2d 311, 316 (D.C.Cir.1974); *Tucker*, 581 F.2d at 237; *Smith v. Mabry*, 564 F.2d 249 (8th Cir. 1977); *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978).

■■■■ On appeal, the prosecution has the burden of explaining the cause for pre-trial delay. Unexplained delay is weighed against the prosecution.[13] *See, e.g., United States v. Jackson*, 542 F.2d 403, 407 (7th Cir. 1976); *Avalos*, 541 F.2d at 116; *United States v. Lockett*, 526 F.2d 1110, 1111 (7th Cir. 1975); *Jones v. Morris*, 590 F.2d 684, 686 (7th Cir.), *cert. denied*, 440 U.S. 965, 99 S.Ct. 1513, 59 L.Ed.2d 780 (1979); *Morris v. Wyrick*, 516 F.2d 1387, 1390 (8th Cir.), *cert. denied*, 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975); *Georgiadis v. Superintendent, Eastern Correctional Facility*, 450 F.Supp. 975, 980 (S.D.N.Y.1978), *affd. without op.*, 591 F.2d 1330 (2d Cir. 1978).

■■■■ The unavailability of a material witness will justify a reasonable delay. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. However, the prosecution's efforts to ensure the attendance of witnesses, particularly where witnesses have been absent on a previous occasion, should also be considered. *See Calloway*, 505 F.2d at 316. A defendant's speedy trial rights do not depend on how convenient the trial date is to potential witnesses. *See United States v. Strunk*, 412 U.S. 434, 439, n.2, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1973). Moreover, an absent witness whose testimony is merely cumulative or of slight importance cannot justify a delay in the trial. *See Dickey*, 398 U.S. at 57; *Arrant v. Wainright*, 468 F.2d 677, 680, n.1, 681 (5th Cir. 1972), *cert. denied*, 410 U.S. 947, 93 S.Ct. 1369, 35 L.Ed.2d 613 (1973).

■■■■ Delay caused by negligence should be weighed against the state, but less heavily than a deliberate attempt to delay trial. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192; *Dickey v. Florida*, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1568–1569, 26 L.Ed.2d 26 (1970). For example, the delay which results from the jury's observation of a defendant who is shackled or wearing jail clothes is weighed against the state. *See United States v. Joyner*, 494 F.2d 501, 505

---

13. We note the state trial court did not make it a practice to enter formal orders setting and resetting trial dates. Only the rationale used by the court may serve to explain the reason for a continuance. Speculation concerning the court's rationale for continuing a case can never be an adequate explanation for delay which threatens so fundamental a constitutional right as the right to speedy trial.

(5th Cir. 1974), *cert. denied*, 419 U.S. 995, 95 S.Ct. 308, 42 L.Ed.2d 268 (1974). *Avalos*, 541 F.2d at 1109. The failure of the government to expedite a case which has been pending for a presumptively prejudicial period of time is treated in a similar fashion. *See United States v. Carsean*, 626 F.2d 528, 534 (7th Cir. 1980). Delay caused by overcrowded dockets is also weighed against the state. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. In *Tucker*, the Court stated:

> A state government's allocation of resources plays a major role in creating congested dockets, and it is unfair to require defendants to bear the entire burden that results from the government's fiscal decisions. There must be a point at which delay due to a congested docket becomes so unacceptable that by itself it violates the right to a speedy trial. That point comes sooner when a defendant is incarcerated awaiting trial. *Tucker*, 581 F.2d at 237.

The crowded dockets rationale for delay must be evaluated in light of the anticipated nature and complexity of the actual trial. In the present case, the trial was simple and straight forward. In fact, the district court specifically found that there were "no serious problems of marshalling evidence or setting trial strategy." Moreover, the state trial judge specifically forecast that the trial would be completed in less than two days. Given these circumstances, this Court would find a crowded docket rationale a dubious explanation for the lengthy delay in the present case.

■ Delay calculated to obtain an advantage over the accused is weighed heavily against the state. *See, e.g., Barker*, 407 U.S. at 514, 92 S.Ct. at 2184; *Marion*, 404 U.S. at 325, 92 S.Ct. at 466. Moreover, delay which is occasioned by a deliberate attempt to delay trial or the calloused indifference of the court shall be weighed heavily against the state. *See Barker*, 407 U.S. at 514, 92 S.Ct. at 2184; *Avalos*, 541 F.2d at 1113; *United States v. McDonald*, 632 F.2d 258, 266 (4th Cir. 1980). In *Arrant*, 468 F.2d 677, the prosecutor delayed trial because he believed the evidence against the defendant was insufficient to establish guilt beyond a reasonable doubt. The Fifth Circuit found the behavior reprehensible and stated:

> Throughout the proceedings involved in this case the State of Florida demonstrated a callous disregard for the rights of this appellant. Appellant has been able to satisfy this court that he prevails on each of the factors which *Barker v. Wingo* throws into the balance. We are especially concerned that after a reasonable time had passed the state did not answer his demands or attempt to justify the delay. This court fears the day when any arm of government is allowed to keep an individual under indictment for an extended period merely because it fears that were he brought to trial, he would be found not guilty. *Id.* at 684.

The court weighed this factor heavily against the prosecution. Similarly, delay which occurs where the state does not have a *prima facie* case against the defendant should also weigh heavily against the state.

■ Delay caused by an intent to persecute, that is, inflict post-conviction punishments on an individual presumed to be innocent is repugnant to the values the speedy trial right is designed to protect. "The Speedy Trial Clause ... serves the public interest by penalizing official abuse of the Criminal process and discouraging official lawlessness." *See United States v. Provo*, D.C., 17 F.R.D. 183 (D.Md.), *aff'd per curiam*, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). Thus, the guarantee protects our common interest that government prosecute, not persecute, those whom it accuses of crime." *Dickey*, 398 U.S. at 44, 90 S.Ct. at 1572.

C. Assertion of Speedy Trial Right

■ "The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192. The failure of a defendant to assert his right to a speedy trial, however,

does not demonstrate that there was no constitutional violation. *Id.* at 528–29, 92 S.Ct. at 2190–2191. However, the Supreme Court has emphasized that the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193. The timeliness, vigor, and frequency with which the right to a speedy trial is asserted are probative indicators of whether a defendant was denied needed access to a speedy trial over his objection. *See Id.* at 528–29, 92 S.Ct. at 21900–21901; *Netterville,* 553 F.2d at 914; *Avalos,* 541 F.2d at 1115.

 In the present case, Cain forcefully raised the speedy trial right on at least five different occasions. In fact, Cain placed the court and the prosecutor on notice that he desired a speedy trial even before arraignment. Moreover, throughout his lengthy pre-trial incarceration, he displayed dogged persistence in reasserting his speedy trial right. All courts which have examined this record, including the Kentucky Supreme Court, have acknowledged that Cain has asserted his speedy trial right diligently and vigorously. We agree with this assessment. This factor will weigh most heavily against the government. The forcefulness of Cain's assertion of his speedy trial right is not diminished in the slightest by Cain's statement that the strength of his speedy trial objection would diminish if his bond was reduced. This statement does not constitute a waiver of a speedy trial objection.

In *Calloway,* 505 F.2d at 316, the court recognized that the rights of speedy trial and bail protect roughly the same interests. The government argued that the failure to assert the speedy trial right until the eve of trial weighed heavily against the defendant. The court disagreed:

The government fails to acknowledge, however, that Calloway continued to press his motion for release pending trial. Since the harm suffered by the delay was the personal prejudice to appellant resulting from confinement at the D. C. Jail, his motion for release was for all relevant purposes the functional equivalent of pressing his right to a speedy trial. *Id.* at 316.

We agree with Chief Judge Bazelon's well-reasoned opinion.

 The speedy trial clause is designed to minimize interference with personal liberty prior to trial. *Cobb v. Aytch,* 643 F.2d 946, 958 (3rd Cir. 1981). This constitutional right also preserves the presumption of innocence, minimizes oppressive pre-trial incarceration, and limits the possibility that the defense is impaired. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *United States v. MacDonald,* —— U.S. ——, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Similarly, the right to reasonable bail is designed to preserve the presumption of innocence, permit the unhampered preparation of a defense, and prevent the infliction of punishment prior to conviction. *See Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). We hold that a demand for reasonable bail is the functional equivalent of a demand for a speedy trial.

Prejudice to the Defendant

 The prejudice [14] caused by a delay should be assessed in light of the interests which the speedy trial is designed to protect. The Supreme Court has identified the three principal interests: 1) to prevent oppressive pre-trial incarceration; 2) to minimize anxiety and concern of the accused; [15] and 3) to limit the possibility that the de-

14. The Supreme Court has emphasized that an affirmative showing of prejudice is not necessarily a prerequisite to establishing a speedy trial violation. *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193; *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973) (Per Curiam).

15. The personal prejudice defendants suffer because of lengthy pre-trial delays was described at length in *Barker.* The time spent in jail awaiting trial was said to destroy "human character" and subject the defendant to public scorn. The Supreme Court also stated:

> [Pre-trial delay] often means loss of job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his

fense will be impaired. *Barker*, 407 U.S. at 522, 92 S.Ct. at 2187. The frequency with which the defendant asserts his speedy trial right is probative indication of the prejudice he is suffering. *Id.* at 531, 92 S.Ct. at 2192. "The more serious the [speedy trial] deprivation, the more likely a defendant is to complain." *Id.*

The present case is a paradigm example of the personal prejudice the right to a speedy trial is designed to prevent. Cain, a resident of Chicago, Illinois, was incarcerated in Louisville, Kentucky. His incarceration, quite obviously, disrupted his family life, isolated him from his friends, and destroyed his ability to continue to work as a dental technician. Moreover, Cain had no prior felony convictions. The harsh and often times violent atmosphere of jail undoubtedly inflicted a grave hardship on him. The Kentucky Supreme Court's admission that it regretted that Cain had "endured the oppression of languishing in jail for over 11 months" is a graphic statement concerning the prejudice Cain experienced during his pre-trial incarceration. In response to these grave hardships, Cain sought a bail reduction and vigorously asserted his right to a speedy trial on at least five separate occasions. On this record, it is difficult to see what additional measures Cain reasonably could have taken to alleviate the oppression. On remand, the district court should determine the effect of Cain's incarceration hundreds of miles away from family, friends, and others who could effectively gather evidence and locate potential alibi witnesses while their memories were fresh. *See Cobb*, 643 F.2d at 960. The date Cain obtained trial counsel is also relevant to this inquiry into the prejudice Cain's defense suffered.

In conclusion, we must remand this action to the district court with directions to conduct an evidentiary hearing and more fully develop the record. The reasons for the delay, the identity and relative importance of the testimony of the missing witnesses, and the motives of the Commonwealth and trial judge are just some of the circumstances which should be investigated. The district court should carefully weigh all the criteria set forth in this opinion and in *Barker* and determine whether Cain's speedy trial right has been denied. If the court finds such a violation, it should dismiss the indictment and release Cain from custody.

ability to gather evidence, contact witnesses, or otherwise prepare his defense. *Barker*, 407 U.S. at 532–33, 92 S.Ct. at 2192–93.