879 F.2d 864
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Stanley Mose CARDINE, Petitioner-Appellant,
v.
Al PARKE, Warden, Respondent-Appellee.
 No. 88-5917.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1989.
 
 Before BOGGS, Circuit Judge, CELEBREZZE, Senior Circuit Judge, and ANN ALDRICH, District Judge.*
 PER CURIAM.
 
 
 1
 Pro se Petitioner Stanley Mose Cardine appeals the district court's denial of his petition for writ of habeas corpus. Petitioner, who was convicted in a jury trial of burglary in the third degree, contends that he was denied a speedy trial, and that he was denied effective assistance of counsel during a post-judgment proceeding. Finding no error in the district court's decision, we affirm.
 
 
 2
 Petitioner was arrested on May 8, 1982, and charged with burglary in the third degree and with the status offense of first degree persistent felony offender (PFO I). After arraignment and a pretrial hearing, trial was set for October 21, 1982.
 
 
 3
 Initially, Petitioner was represented by the public defender. As a result of a conflict of interest, however, outside counsel, Mr. Gus Daleure, was appointed in July, 1982, and the trial date was continued to December 15, 1982. Later, the case was reassigned to March 1, 1983, for reasons not ascertainable from the record.
 
 
 4
 On March 1, 1983, the trial was continued to March 10, 1983, because of the absence of a state's witness. Immediately before the March 10 trial date, however, Petitioner's counsel, Mr. Daleure, filed a motion to be relieved as counsel citing Petitioner's filing of a complaint with the Kentucky Bar Association against him. The motion was granted and substitute counsel, Mr. Radolovich, was appointed on March 24, 1983. On April 29, 1983, Mr. Radolovich filed a motion for speedy trial. Within a month, however, Mr. Radolovich filed a motion to be relieved as counsel citing his inability to "fulfill [Cardine's] demands in representation." The motion was granted on June 6, 1983, and a fourth attorney, Mr. Porath, was appointed. Trial was finally held on September 6, 1983, some sixteen months after Petitioner's arrest. During the entire sixteen month period, Petitioner remained incarcerated because he was unable to make bail.
 
 
 5
 The jury convicted Petitioner of burglary in the third degree, and on a finding that Petitioner was a PFO I, Petitioner's one year sentence was enhanced to twenty years. Petitioner was given full credit for his sixteen month pretrial detention.
 
 
 6
 Petitioner's attorney, Mr. Porath, timely filed post-conviction motions for a new trial and for judgment notwithstanding the verdict (jnov). The judge orally informed the parties that both motions were denied. The trial judge wrote "overruled" and signed his name on Petitioner's motion for a new trial. On the order accompanying the motion for jnov, however, the trial judge neglected to write "overruled" above his signature.
 
 
 7
 After Petitioner began to serve his sentence, it was discovered in the process of post-conviction review that the order tendered with the motion for jnov did not recite that the motion had been "overruled"; the motion thus gave the appearance of having been "granted." A certified copy of the order was presented to Respondent, Warden Parke, and Petitioner was released in May of 1984.[1] As a result of Petitioner's release from prison, his direct appeal from the underlying conviction was dismissed.
 
 
 8
 Approximately one year after Petitioner's release, in May, 1985, the Commonwealth of Kentucky moved pursuant to Ky.R.Civ.P. 60.01 and Ky.R.Cr.P. 10.10[2] to correct the "clerical error" in the jnov order that resulted from the trial judge's omission of "overruled" from that order. An evidentiary hearing was held at which Petitioner was represented by privately retained counsel. The Commonwealth's attorney, Petitioner's trial attorney, and the judge, who was by now retired, all testified that the motion for jnov had been orally overruled by the trial judge. Nonetheless, the Jefferson Circuit Court refused to correct the order nunc pro tunc holding that the mistake had been a "judicial error" and not a "clerical error." The Commonwealth appealed. Before that appeal, however, Petitioner's retained counsel had resigned; the Commonwealth appointed the public defender to represent Petitioner on appeal, but due to unexplained confusion no appellate brief was filed on Petitioner's behalf. The Kentucky Court of Appeals reversed, holding that the failure of the judge to write "overruled" was a mere clerical error. The jnov order was thus retroactively overruled, and Petitioner was again incarcerated.
 
 
 9
 Petitioner, who was in jail pending trial on an unrelated charge, was not promptly informed of the court of appeals' decision, and thus, he failed to seek a rehearing or file a timely appeal with the Kentucky Supreme Court. Thereafter, Petitioner's appointed counsel refused to move for discretionary review by the Kentucky Supreme Court on the ground that this was not an appeal that "a reasonable person with adequate means would" pursue.[3] Petitioner, however, did file a pro se motion for discretionary review of the court of appeals' decision, which was denied by the Kentucky Supreme Court.
 
 
 10
 After Petitioner's efforts to overturn the court of appeals' decision regarding the jnov motion proved fruitless, Petitioner's direct appeal from his underlying criminal conviction was reinstated. An attorney was appointed to represent Petitioner on his direct appeal, but Petitioner's conviction was affirmed by the Kentucky Supreme Court. Finally, on April 18, 1988, Petitioner filed this pro se petition for writ of habeas corpus, which was denied by the district court. After Petitioner's motion to alter or amend judgment was also denied, this timely appeal ensued.
 
 I.
 
 11
 Petitioner first contends that he was denied his Sixth Amendment right to a speedy trial as a result of the sixteen month delay between his arrest and trial. A sixteen month delay, however, is not a constitutional violation per se; rather, we are required to apply a balancing test to analyze Petitioner's speedy trial claim. See Barker v. Wingo, 407 U.S. 514, 530 (1972). In Barker, the United States Supreme Court set out four factors to be considered in determining whether a particular defendant has been deprived of his right to a speedy trial. They include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. Id.; see also Cain v. Smith, 686 F.2d 374, 381 (6th Cir.1982). Applying the Barker test to Petitioner's claim, we find no violation of Petitioner's Sixth Amendment right to a speedy trial.
 
 
 12
 Although Petitioner was not brought to trial until sixteen months after his arrest, much of the delay can be accounted for by Petitioner's inability or unwillingness to cooperate with his assigned counsel, and by the continuances in trial necessitated by Petitioner's frequent changes of counsel. The original delay in trial from October 21, 1982, until December 15, 1982, can at least partially be explained by the appointment of outside counsel, Mr. Daleure, to replace the public defender as Petitioner's counsel. Mr. Daleure's appointment was made just days before a pretrial hearing. Further delay was occasioned by Petitioner's filing of a complaint against Mr. Daleure with the Kentucky Bar Association, resulting in Mr. Daleure being relieved as Petitioner's counsel in March of 1983. Subsequently, Mr. Radolovich was appointed as counsel to replace Mr. Daleure. But, in May of 1983, Petitioner's relationship with Mr. Radolovich grew strained, again resulting in his release as Petitioner's counsel and further delay. A fourth attorney, Mr. Porath was appointed, and trial was finally held on September 6, 1983. Since substantial delay was directly attributable to Petitioner's numerous changes of counsel, Petitioner's participation in the delay constituted a justification for the postponement of trial. See Barker, 407 U.S. at 531.
 
 
 13
 The delays in trial from October 21, 1982, until March 1, 1983, are not fully explained on the record, although the continuance from October to December 15, 1982, can at least partially be attributed to Petitioner's first change of counsel. However, Petitioner never objected to the continuances during the period of allegedly unjustified delays. Petitioner's failure to assert his right to a speedy trial in a diligent and vigorous manner at the juncture weighs against his Sixth Amendment claim. Cf. Cain, 686 F.2d at 384.
 
 
 14
 Petitioner's first motion for a speedy trial was not filed until April 29, 1983, by his third attorney, Mr. Radolovich. Within a month, however, Petitioner released Mr. Radolovich as his attorney. Petitioner, acting pro se, then filed a motion to dismiss due to a delay in trial, but that motion was withdrawn by his new (fourth) attorney. Petitioner's fourth attorney renewed a motion to dismiss for lack of a speedy trial, but that motion was made just twelve days before trial was held. Since Petitioner did not assert his right to a speedy trial until late April of 1983, and subsequent events attributable to Petitioner, including the replacement of counsel, necessitated further delay, the postponement of trial in the face of Petitioner's assertion of his right to a speedy trial was justified. Cf. Barker, 407 U.S. at 531.
 
 
 15
 Finally, the prejudicial impact of the delay was not shown. Petitioner has not demonstrated that his counsel was hampered in any way in preparing and presenting a defense. In Petitioner's pro se motion to dismiss in August, 1983, he did assert that a witness on his behalf had gone to California and that this witness would have testified that Petitioner did not enter the premises which were burglarized with the intent to steal. However, Petitioner has not set forth the information possessed by the alleged witness that would have illuminated Petitioner's subjective intent. Thus, the possibility of any prejudicial impact from the delay was not substantial.
 
 
 16
 In balancing the four factors identified in Barker, we agree with the district court that although the sixteen month delay between Petitioner's indictment and trial was somewhat lengthy, it "was not so inordinately and so inexplicably protracted as to deny petitioner his right to a speedy trial."
 
 II.
 
 17
 Petitioner further contends that he was denied his Sixth Amendment right to the effective assistance of counsel when his appointed attorney failed to file a brief on his behalf in the Kentucky Court of Appeals with regard to the validity of the mistakenly "granted" jnov motion. In the proceeding at issue, the Commonwealth of Kentucky appealed from the Jefferson Circuit Court's post-judgment holding that the original trial judge's omission of "overruled" on Petitioner's jnov motion was a mistake of law not subject to correction. The Kentucky Court of Appeals ruled that pursuant to Ky.R.Civ.P. 60.01 and Ky.R.Cr.P. 10.10, a clerical error subject to correction had been made, and that the Jefferson Circuit Court had erred in failing to correct the judgment. Petitioner was accordingly returned to prison.
 
 
 18
 Assuming only for the purposes of this discussion that Petitioner had the constitutional right to counsel during the disputed appeal,[4] a contention that the Commonwealth does not directly challenge, we conclude that counsel's failure to file a brief was not, on the facts of this unusual case, a deprivation of Petitioner's right to effective assistance of counsel. Under Strickland v. Washington, 466 U.S. 668 (1984), the ineffective assistance of counsel inquiry has two prongs. First, Petitioner must show that his counsel's performance was "deficient," i.e., "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, Petitioner must show that prejudice resulted from the error of counsel which was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 
 
 19
 Counsel's performance in failing to file a brief in the appeal at issue was undoubtedly "deficient" under Strickland. However, given that this post-judgment proceeding concerned only the application of a state procedural rule for reforming judgments and did not directly dispute Petitioner's guilt or challenge the fundamental fairness of his criminal trial, we conclude that Petitioner was not "prejudiced" by counsel's error as that term is used in ineffective assistance jurisprudence. The prejudice component of the ineffective assistance inquiry is directly tied to the fairness and reliability of Petitioner's conviction.[5] As stated in Strickland, "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686; see also Evitts v. Lucey, 469 U.S. 387, 393, 399-400 (1985) (in finding the right to effective assistance applicable to the first appeal as of right, Supreme Court noted that such an appeal was crucial to the determination of guilt or innocence). Petitioner here does not suggest, however, that his counsel's deficient performance in any way casts aspersions on the jury's finding of guilt or the justness of his conviction. Indeed, it is worth emphasizing that Petitioner does not contest the testimony of the prosecutor, Petitioner's trial counsel, and the trial judge, who unanimously stated that the judge had orally overruled the jnov motion. That Petitioner was properly convicted, therefore, is beyond question. Under these circumstances, we conclude that Petitioner's counsel's failure to file a brief in this collateral proceeding was not prejudicial under Strickland, and his Sixth Amendment right was therefore not violated.[6]
 
 
 20
 Moreover, insofar as Petitioner's claim can be understood as strictly alleging a violation of due process, we are likewise not persuaded. First, as the Supreme Court has noted in an analogous case, "Such deprivation--even if implicating a due process interest--was caused by his counsel, and not by the State." Wainwright v. Torna, 455 U.S. 586, 588 n. 4 (1982). In any event, we conclude that the Commonwealth's appellate court proceeding was not fundamentally unfair. In reversing the Jefferson Circuit Court's decision in favor of Petitioner, the Kentucky Court of Appeals had available and clearly considered the lower court's opinion, which was favorable to Petitioner, the record from the lower state court, which was developed with the participation of Petitioner's counsel, as well as the arguments advanced by Petitioner's counsel at the lower court proceeding. The Kentucky Court of Appeals' decision, therefore, was not rendered, as Petitioner would have us believe, totally without the benefit of argumentation on his behalf. Indeed, the Kentucky Court of Appeals clearly distinguished the instant case from James v. Hillerich & Bradsby Co., 299 S.W.2d 92 (Ky.1956), the case relied upon by both Petitioner and the Jefferson Circuit Court in arguing that the original mistaken written order could not be amended. Under these circumstances, in which the Court considered the arguments made by counsel in the lower court and clearly addressed the authority on which Petitioner and the favorable lower court decision relied, we find no violation of due process in the appellate court's rendering of a decision in the absence of a brief on behalf of Petitioner.
 
 
 21
 The district court's denial of habeas corpus relief is AFFIRMED.
 
 
 
 *
 The Honorable Ann Aldrich, U.S. District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 After his release, Petitioner filed a section 1983 claim against the warden alleging false imprisonment. The warden's motion for summary judgment was granted. Cardine v. Rees, C85-0501-L(B) (W.D.Ky.1985)
 
 
 [2]
 Ky.R.Civ.P. 60.01 and Ky.R.Cr.P. 10.10 state in relevant part:
 Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders....
 
 
 [3]
 KRS Sec. 31.110(2)(c) states in relevant part:
 ... However, if the counsel appointed in such post-conviction remedy, with the court involved, determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense, there shall be no further right to be represented by counsel under the provisions of this chapter.
 
 
 [4]
 Petitioner undoubtedly had a constitutional right to counsel on his first appeal as of right. See Douglas v. California, 372 U.S. 353 (1963). Following the collateral proceeding in which the clerical mistake relating to the jnov motion was corrected, Petitioner's first appeal of right pertaining to his underlying criminal conviction was reactivated. Petitioner was provided with counsel on this appeal, and he does not contend that he was deprived of effective assistance of counsel in that first appeal as of right
 
 
 [5]
 The failure to file an appellate brief on direct appeal may be considered constructive if not actual denial of the effective assistance of counsel and thus presumptively prejudicial. See Penson v. Ohio, 109 S.Ct. 346, 352-54 (1988); Strickland v. Washington, 466 U.S. 668, 692 (1984); Entsminger v. Iowa, 386 U.S. 748 (1967). Under the unusual circumstances presented in the case at bar, however, Petitioner's counsel's failure to file a brief in this collateral proceeding did not directly impugn the merits or fairness of Petitioner's criminal conviction. Because Petitioner's appeal of his criminal conviction was reactivated and he was appointed counsel who effectively assisted him on that appeal, see supra note 4, we distinguish Petitioner's situation from Penson, in which the criminal defendant was entirely without the assistance of counsel on his first appeal as of right. We therefore conclude that Petitioner was required to satisfy the prejudice component of the Strickland inquiry with regard to the fairness and reliability of his underlying conviction
 
 
 [6]
 Largely for the same reasons set forth in the text, we further believe any error of constitutional magnitude in this collateral proceeding would be "harmless" under Chapman v. California, 386 U.S. 18 (1967)