Ralph C. HAUCK, Petitioner,

v.

David G. MILLS, Warden, Respondent.

No. 2:96–0028.

United States District Court,
M.D. Tennessee,
Northeastern Division.

Sept. 19, 1996.

Ralph Charles Hauck, Only, TN, pro se.

Michael J. Fahey, II, Office of the Attorney General, Criminal Justice Division, Nashville, TN, for defendant Mills.

### MEMORANDUM

WISEMAN, Senior District Judge.

Pending before the Court are respondent David G. Mills' and petitioner Ralph C. Hauck's motions for summary judgment in the above-entitled matter. For the reasons discussed in the following memorandum, respondent's motion is GRANTED and petitioner Hauck's DENIED.

### I. Facts and Procedural History

Ralph C. Hauck ("Petitioner"), proceeding pro se, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Turney Center Prison in Only, Tennessee. On July 24, 1989, Petitioner was convicted of first degree murder and aggravated kidnapping, for which he received a sentence of life imprisonment plus forty years. Through counsel, Petitioner pursued a direct appeal of his convictions. The Tennessee Court of Criminal Appeals affirmed the trial court in an opinion filed April 16, 1992, and the Tennessee Supreme Court subsequently dismissed Petitioner's application for further review on August 31, 1992.

A petition for post-conviction relief pursuant to T.C.A. § 40–30–101 et seq. was filed in the Criminal Court for White County, Tennessee on May 26, 1992. The petition was subsequently amended and refiled by Petitioner's appointed counsel on May 11, 1993. After conducting an evidentiary hearing on July 23, 1993, the trial court dismissed the petition. The Tennessee Court of Criminal Appeals upheld the denial of post-conviction relief in an opinion filed May 17, 1995, and the Tennessee Supreme Court denied Petitioner's application for permission to appeal on November 6, 1995.

Petitioner filed the instant petition for federal habeas corpus relief from state custody on March 22, 1996. The petition raises two constitutional claims attacking the legality of Petitioner's murder and aggravated kidnapping convictions. First, Petitioner contends that he was denied the effective assistance of trial and appellate counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution. Second, Petitioner argues that he was denied a speedy trial as guaranteed by the Sixth and Fourteenth Amendments.

After examining the petition and concluding that Petitioner was not then entitled to issuance of the writ, this Court ordered the respondent David G. Mills, Warden of Turney Center Prison ("Respondent"), to file an answer, plead or otherwise respond to the petition in conformance with Rule 5, Rules— § 2254 Cases.

Presently before the Court is Respondent's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) filed in response to Petitioner's claim for federal habeas relief. Petitioner has also filed a motion for summary judgment.

### II. Applicable Law

██ The petition for a writ of habeas corpus is essentially a civil action in federal court. See, e.g., Fisher v. Baker, 203 U.S. 174, 181, 27 S.Ct. 135, 136, 51 L.Ed. 142 (1906). As such, it is subject to the Federal Rules of Civil Procedure where the application of the federal rules would not be inconsistent with established habeas practice and procedure. Rule 11, Rules— § 2254 Cases and Advisory Committee Note. It is well established that the motion for summary

judgment as provided in Fed.R.Civ.P. 56 is applicable to habeas proceedings. *See, e.g., Blackledge v. Allison,* 431 U.S. 63, 80–81, 97 S.Ct. 1621, 1632–33, 52 L.Ed.2d 136 (1977). Moreover, consideration of a motion for summary judgment allows the district court to assess the need for an evidentiary hearing on the merits of a habeas petition. *See id.* (discussing the role of summary judgment motions in determining the need for plenary presentation of evidence in habeas proceedings at the federal level).

■■■ The summary judgment procedure permits this Court to dispose of actions wherein there are no genuine issues of material fact. Under Fed.R.Civ.P. 56(c), the movant has the burden of establishing the absence of genuine issues of fact that are material to the cause of action and of demonstrating entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The existence of contested facts will not defeat a summary judgment motion if those facts which affect the outcome of a claim are not in controversy. *Id.* at 248, 106 S.Ct. at 2510. What constitutes a material fact is identified by the substantive law governing the disposition of an issue. *Id.* As stated by the United States Supreme Court, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In addition to materiality, the summary judgment inquiry also asks if a dispute as to a material fact is genuine. That is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

■■■ To contest a motion for summary judgment, the nonmovant must do more than merely refer to and rely upon the allegations of his pleadings. Rather, he must "set forth specific facts showing that there is a genuine issue for trial." *Id.* While the nonmovant's burden is merely to demonstrate that there should be a hearing as to the merits of a claim, the opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v.*

*Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■■■ The substantive law of federal habeas corpus actions defines those facts which are material to the issuance of the writ. Under 28 U.S.C. § 2241(c), a district court may grant a petition for federal habeas relief where the petitioner alleges and proves facts showing that he is in custody in violation of the Constitution or laws of the United States. Where a prisoner has been afforded a hearing in state court on the merits of his constitutional claims, however, the federal habeas statutes provide that the written findings of fact reached by the state court, whether trial or appellate, "shall be presumed to be correct." 28 U.S.C. § 2254(d). Thus, while those facts tending to demonstrate the unconstitutionality of state custody are material, due to the statutory presumption of correctness, the petitioner faces a comparatively higher burden in establishing the genuineness (or hearing worthiness) of contested facts. *See Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) (*Sumner* I) (stating that when state and federal courts review the same record, comity and federalism concerns mandate deference to state court factual findings).

■■■ The statutory presumption of factual correctness does not attach, however, if one of the eight exceptions listed in 28 U.S.C. § 2254(d) is found. *Sumner v. Mata,* 455 U.S. 591, 597–98, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982) (*Sumner* II). The eight factors listed under § 2254(d) essentially codify the circumstances when an evidentiary hearing is mandated in the federal forum. *Loveday v. Davis,* 697 F.2d 135, 137 (6th Cir.1983). One or more of the statutory exceptions may be found to exist by one of three methods: "the applicant may establish that such exists; it shall otherwise appear that such exists; or the respondent shall admit that such exists." *Id.* at 138; 28 U.S.C. § 2254(d). With respect to the first method, the petitioner must at a minimum allege that the factual determinations of the state courts fall within the purview of § 2254(d)(1)–(8) or at least "provide indicia that an attempt will be made to satisfy the

same." *Loveday*, 697 F.2d at 138. In addition, the petitioner must prove the applicability of one or more of the statutory exceptions by "convincing evidence." 28 U.S.C. § 2254(d). If the petitioner fails to allege the incorrectness of state factual determinations and it does not otherwise appear or the respondent does not admit such error, "the district court is at liberty to accept the underlying factual determinations as correct and apply the same to controlling legal principles." *Loveday*, 697 F.2d at 138.

■■■■ The foregoing discussion concerns application of the statutory presumption in favor of state court factual determinations. In the instant application, Petitioner has challenged the constitutionality of his convictions on two Sixth Amendment grounds. With respect to ground one—the ineffective assistance of trial and appellate counsel—the U.S. Supreme Court has instructed that this issue is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Although the state findings of historical fact underlying an ineffectiveness claim are entitled to deference, conclusions as to the ultimate issues of attorney competence and prejudice to the petitioner are legal in nature and therefore beyond the scope of § 2254(d). *Id.; Adams v. Jago*, 703 F.2d 978, 980 (6th Cir.1983). Similarly, Petitioner's second Sixth Amendment ground— lack of a speedy trial—also ultimately presents a question of law. *Cain v. Smith*, 686 F.2d 374, 380 (6th Cir.1982). While state court factual determinations are subject to a statutory presumption of correctness, the district court has plenary power to dispose of legal questions presented for federal habeas review. *Brown v. Allen*, 344 U.S. 443, 506, 73 S.Ct. 437, 445, 97 L.Ed. 469 (1953); *Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963).

Federal habeas law thus provides that, with respect to Petitioner's constitutional grounds, the historical facts reached by the Tennessee courts and underlying Petitioner's claims must be presumed to be correct unless the Petitioner establishes (or indicates an intent to establish) by convincing evidence that one of the § 2254(d) exceptions applies.

In addition, as legal questions, conclusions as to whether the Petitioner was denied the effective assistance of counsel and a speedy trial are subject to this Court's review and disposition.

## III. Analysis

### A. Ineffective Assistance of Counsel

■■■■ In ground one of his petition, Petitioner alleges that he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution. Petitioner was represented by appointed counsel at both the trial and appellate stages of the criminal proceedings against him. The issue of attorney competence and assistance was briefed and decided by the Tennessee courts in conjunction with consideration of Petitioner's application for post-conviction relief. Petitioner claims that his lawyers failed to interview potential fact and alibi witnesses, that they failed to petition for funds with which to purchase investigative and expert services, that appellate counsel failed to present issues on appeal that were raised in Petitioner's motion for a new trial, and that appellate counsel failed to timely file for permission to appeal to the Tennessee Supreme Court. These claims have been reiterated in the instant petition.

The Tennessee Court of Criminal Appeals, the highest state court to consider Petitioner's application for post-conviction relief, found that, even assuming Petitioner's allegations to be true, he was not prejudiced because the evidence against him was "so overwhelming." Moreover, Petitioner could not present any witnesses at his post-conviction evidentiary hearing "whose testimony could have possibly been helpful to him at trial." In short, the Tennessee appellate court concluded that, assuming Petitioner's factual allegations to be true, as a matter of law he was not denied the effective assistance of counsel.

■■■■ At the federal level, the competence of counsel is a question of law subject to a two-tiered analysis as set forth by the Supreme Court in *Strickland v. Washington:*

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors

so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. at 2064. *Strickland* establishes that the performance prong of the effectiveness standard requires the attorney to act in a reasonably competent manner under the circumstances and in accordance with prevailing norms of practice. *Id.* at 688, 104 S.Ct. at 2064. In addition, the reviewing court must begin with a strong presumption in favor of attorney competence. *Id.* at 689, 104 S.Ct. at 2065.

Like the Tennessee appellate court, this Court may assume the truth of Petitioner's factual allegations and still find that his trial and appellate counsel performed in a competent manner. First, trial counsel's strategic decisions concerning the presentation and examination of witnesses are not subject to challenge if it is apparent that a defense lawyer has made a thorough investigation of relevant facts and law or reasonable professional judgments support limiting such an investigation. *Sims v. Livesay,* 970 F.2d 1575, 1579–80 (6th Cir.1992). Petitioner does not attack his lawyers' knowledge of the law (the record indicates that Petitioner was represented by several successive court-appointed lawyers during the course of his trial; his primary defense attorney is now deceased), but rather their election not to pursue certain trial and alibi witnesses. Significantly, when given the opportunity to present testimony at his post-conviction hearing, Petitioner failed to produce any witnesses who could call his conviction into question. Although Petitioner's post-conviction brief to the Tennessee Criminal Court of Appeals names several potential witnesses subsequently interviewed by the Public Defender's office, the brief never explains how or why these witnesses are material. Due to the dangers of post-verdict secondguessing, this Court is bound by the presumption that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland,*

466 U.S. at 689, 104 S.Ct. at 2065. Accordingly, Petitioner's claim of ineffective assistance of counsel based upon failure to investigate certain trial and alibi witnesses lacks merit.

■ Second, Petitioner claims that his trial counsel failed to secure funds for investigative and expert services after moving the trial court for same. Apparently, one of Petitioner's appointed attorneys filed a motion for expert and investigative funds in 1988. When this attorney withdrew from the case, his replacement failed to argue or otherwise proceed with the motion. While the attorney who initially filed the motion certified a need for funds based upon lack of time and expertise, Petitioner does not contend nor does the record indicate that the three court-appointed lawyers subsequently assigned to Petitioner's defense had similar need for funding. Moreover, because Petitioner fails to state even generally how investigative and expert services would have assisted in his defense, he cannot establish prejudice—the second prong of the *Strickland* test. *Id.* at 687, 104 S.Ct. at 2064.

■ Third, Petitioner asserts that his appointed appellate counsel presented only one issue, spousal privilege, on appeal when his trial counsel had raised multiple grounds in support of a motion for a new trial. The fact that appellate counsel avoided trial counsel's assignments of error is not in dispute. The issue is whether, as a matter of federal law, appellate counsel breached his duty of competence and whether this breach prejudiced Petitioner's defense. The stringent, deferential standard applicable to the ineffective assistance of trial counsel set out in *Strickland* also applies to the work of appellate counsel. *Bowen v. Foltz,* 763 F.2d 191, 194 (6th Cir. 1985). Again, this Court is obligated to assess attorney competence "from counsel's perspective at the time [of the] ... challenged conduct." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. As with the decisions of trial counsel, the strategic considerations of appellate counsel are insulated from review if reasonably competent. In addition, even if a defendant has suggested certain issues and avenues of argument, his lawyer is

not bound by these preferences. *See Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) ("[No] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.").

Petitioner's appointed counsel elected to focus on spousal privilege because Petitioner's wife had been an eyewitness to his crimes and had given the most damaging testimony against him at trial. The choice not to proliferate issues on appeal, but rather to concentrate upon particularly important errors has been recognized and endorsed by the U.S. Supreme Court: "[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (internal quotation and citation omitted). Petitioner was unable to show during the state post-conviction process how he was prejudiced by the failure to raise multiple issues on appeal. In fact, in his brief, post-conviction counsel merely reiterates trial counsel's assignments of error without establishing their relevance to Petitioner's defense. Appellate counsel's decision to raise only spousal privilege on appeal, aimed at the heart of the state's case against Petitioner, was a strategic choice that does not constitute the ineffective assistance of counsel under the rigorous *Strickland* standard.

 Finally, Petitioner argues that his last court-appointed lawyer failed to timely file an Application for Permission to Appeal to the Tennessee Supreme Court thereby denying him final direct review of his convictions. The U.S. Supreme Court has held that the effective assistance of appellate counsel includes proper and timely filing of requests for appellate review. *Anders v. California,* 386 U.S. 738, 742–44, 87 S.Ct. 1396, 1399–400, 18 L.Ed.2d 493 (1967); *Entsminger v. Iowa,* 386 U.S. 748, 751–52, 87 S.Ct. 1402, 1403–04, 18 L.Ed.2d 501 (1967); *Evitts v. Lucey,* 469 U.S. 387, 397, 105 S.Ct.

830, 836, 83 L.Ed.2d 821 (1985). In *Evitts v. Lucey,* defendant's counsel failed to comply with a procedural rule of the Kentucky Court of Appeals allowing the state to move for dismissal of defendant's first appeal as of right. 469 U.S. at 389–90, 105 S.Ct. at 832–33. The U.S. Supreme Court found that the state could not extinguish the defendant's right to an appeal based upon the procedural errors of counsel when such errors deny the defendant the right to effective assistance of counsel. *Id.* at 399–400, 105 S.Ct. at 837–38.

In *Evitts,* the procedural default of counsel was traceable solely to counsel's own conduct. In Petitioner's case, it is unclear that the late filing of the application to appeal was a unilateral error. In its opinion denying post-conviction relief to Petitioner, the Tennessee Criminal Court of Appeals found that Petitioner had become "mistrustful" of his appellate counsel and had filed a pro se motion to have his attorney dismissed before perfection of appeal. In addition, Petitioner testified that he refused to cooperate with appellate counsel and to communicate with them regarding his defense. Petitioner was appointed counsel to perfect his appeal to the Tennessee Supreme Court, but the Tennessee appellate court found that it is questionable whether Petitioner spoke with counsel about his appeal or indicated a willingness even to pursue an appeal.

Under 28 U.S.C. § 2254(d), these factual findings are entitled to deference. Petitioner has failed to contest these conclusions in his application, and his post-conviction brief to the Tennessee appellate court does not discuss the factual underpinnings of his attempted appeal. Moreover, Petitioner does not refer in any way in his habeas application to the statutory exceptions to the presumption of correctness, nor does he indicate a willingness to contest the accuracy and completeness of the post-conviction record wherein his constitutional claims were heard. *See Loveday v. Davis,* 697 F.2d 135, 138 (6th Cir.1983) (stating that the habeas petitioner must at least constructively invoke one of the § 2254(d) exceptions in order to overcome the presumption of factual correctness). This Court concludes that Petitioner neither intends to nor can prove by convincing evi-

dence that the findings of uncooperativeness and uncommunicativeness reached by the Tennessee Court of Criminal Appeals are in error. Accordingly, this case is distinguishable from a case like *Evitts* where the defendant has reposed trust in appellate counsel, and counsel's mistakes are entirely his own. Here, the Petitioner actively sought dismissal of his appellate counsel and refused to cooperate and communicate with him. A claim of ineffective assistance of counsel lacks merit if the purportedly aggrieved party has actively obstructed the rendering of attorney services.

### B. Speedy Trial

 Petitioner alleges as his second Sixth Amendment ground that he was denied a speedy trial. Petitioner was arrested on November 11, 1987 and brought to trial on July 24, 1989, a period of approximately twenty-one months. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the U.S. Supreme Court adopted a four factor balancing test for determining whether a defendant's constitutional right to a speedy trial has been violated. These factors include: (1) length of delay, (2) the reason for delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192. None of the four factors alone is a necessary or sufficient condition to the finding of unconstitutional delay; "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. at 2193. Application of the balancing test, although dependent upon the development of historical facts, ultimately presents a legal question that is freely reviewable by the federal court in a habeas action. *Cain v. Smith,* 686 F.2d 374, 380 (6th Cir.1982).

 It is undisputed that the Petitioner asserted his right to speedy trial by motion, and that his case was pending for twenty-one months. This Court's analysis will therefore focus upon the second and fourth factors—reason for delay and prejudice—of the *Barker* balancing test. Whether the delay is presumptively prejudicial depends upon the nature and complexity of the underlying crime or crimes. *Id.* at 381.

The Supreme Court has instructed that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. Petitioner was charged with murder and aggravated kidnapping, crimes somewhere between these two extremes. Various federal courts have held, however, that even in complex cases a delay of less than one year is presumptively prejudicial. *See, e.g., United States v. Avalos,* 541 F.2d 1100, 1111 n. 19 (5th Cir.1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977) ("We have in the past routinely applied the *Barker* balancing test even in complex conspiracy cases in which the speedy trial period was thought to be nine or ten months.").

Although a delay of twenty-one months would appear to be unconstitutionally excessive given the severity and complexity of Petitioner's crimes, considerations of prejudice must be tempered by examination of the reasons for such delay. The Tennessee Court of Criminal Appeals concluded, and Petitioner does not dispute, that a total of five different trial lawyers were appointed to handle Petitioner's defense. (The record reveals that Petitioner was represented by seven different attorneys during the course of his trial and appeal.) As Petitioner became dissatisfied with the performance of appointed counsel, he requested their withdrawal or dismissal. He filed numerous and voluminous pro se motions and briefs even while represented by counsel, forcing the trial court to delay proceedings in order to respond or to appoint substitute counsel. Over time, Petitioner refused to communicate or cooperate with counsel and refused the assignment of several court-appointed attorneys. These factual findings of the Tennessee appellate court are given deference under § 2254(d). Petitioner's habeas application does not contest the conclusions concerning Petitioner's dilatory conduct, nor does it indicate any intention to do so.

 While most causes of delay are weighed against the government, *Cain,* 686 F.2d at 382–83, the reasons for delay in this case are almost solely attributable to Peti-

tioner's own behavior. When the defendant's own conduct has led to a delay in trial proceedings, charges of prejudice become attenuated and lose force. Although the right to speedy trial is designed to protect against oppressive pretrial incarceration, unnecessary defendant anxiety and an impaired defense, *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, Petitioner is precluded from claiming such interests in this case because his own actions prolonged the proceedings against him. Petitioner's claim of unconstitutional delay is without merit.

### IV. Conclusion

For the foregoing reasons, and because there are no genuine issues of material fact and because Respondent is entitled to summary judgment as a matter of law, Respondent's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) is GRANTED as to the Sixth and Fourteenth Amendment grounds raised in Petitioner's claim for federal habeas relief. Accordingly, Petitioner's federal habeas application is DISMISSED.

This Court has reviewed the habeas reform provisions found in Title I of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("Act"). The Act, signed into law on April 24, 1996, amends 28 U.S.C. § 2254(d) to make the exceptions to the statutory presumption of factual correctness less accessible to habeas petitioners. Assuming, without deciding, that the Act applies, this Court finds that the result in this case remains unchanged.

An appropriate order will enter.

### ORDER

For the reasons stated in the accompanying Memorandum, Respondent's motion for summary judgment in this matter is GRANTED. Petitioner's motion for summary judgment is DENIED, and his petition for a writ of habeas corpus is hereby DISMISSED.

It is so ORDERED.