**Kenneth Michael HARRIS, Petitioner,**

v.

**Jimmy STEGALL, Respondent.**

No. Civ. 00CV73782DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 14, 2001.

Kenneth Harris, New Haven, MI, Pro se.

Laura G. Moody, Brad H. Beaver, Michigan Department of Attorney General Ha-beas Corpus Division, Lansing, MI, for Respondent.

### OPINION AND ORDER OF SUMMARY DISMISSAL

STEEH, District Judge.

Kenneth Michael Harris, ("petitioner"), presently confined at the Macomb Correctional Facility in New Haven, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed through Douglas W. Baker and Marla R. McCowan of the Michigan State Appellate Defender Office, petitioner challenges his conviction on five counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(f); M.S.A 28.788(2)(1)(f). Respondent has filed a motion for summary judgment on the ground that petitioner's claims are procedurally defaulted. For the reasons stated below, petitioner's application for a writ of habeas corpus is dismissed with prejudice.

### I. BACKGROUND

Petitioner was convicted of the above offenses after a jury trial in the Macomb County Circuit Court on February 9, 1993. Petitioner's conviction was affirmed by the Michigan Court of Appeals on direct appeal. *People v. Harris,* # 165220 (April 4, 1997); *rehearing den.* 165220 (Mich.Ct. App. June 16, 1997). Petitioner never filed an application for leave to appeal to the Michigan Supreme Court.[1] However, petitioner, through the State Appellate Defender Office, filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.* In that motion, petitioner again raised the six issues that he had raised in his appeal of right for the purpose of being able to exhaust his claims

---

1. *See* Affidavit of Corbin R. Davis, Clerk for the Michigan Supreme Court, dated October 2, 2000, Exhibit # 19 in the Court's file.

with the Michigan Supreme Court. Petitioner also raised four new additional claims. The trial court denied the first six claims pursuant to M.C.R. 6.508(D)(2), on the ground that these issues had already been decided against petitioner on his direct appeal. The trial court dismissed the four remaining claims pursuant to M.C.R. 6.508(D)(3), finding that petitioner had failed to establish cause and prejudice for his failure to raise these claims in his appeal of right. *People v. Harris,* 92–2000–FC; 92–2001–FC, 92–2002–FC (May 29, 1998) (Macomb County Circuit Court, May 29, 1998) (Bruff, J.). The Michigan Court of Appeals and Michigan Supreme Court denied petitioner leave to appeal on the ground that he had failed to show that he was entitled to relief under M.C.R. 6.508(D). *People v. Harris,* 219758 (Mich. Ct.App. September 27, 1999); *lv. den.* 461 Mich. 1015, 622 N.W.2d 522 (2000). Petitioner has now filed an application for writ of habeas corpus, seeking relief on the following grounds:

> I. The court denied petitioner a fair trial where the court erroneously excluded impeachment evidence that was critical to the consent defense. Alternatively, counsel was ineffective.
>
> II. Mr. Harris' right to the effective assistance of counsel was denied under the Federal and State constitutions where trial counsel did not object to the admission of numerous instances of improper arguments by the prosecutor; made no objection to repeated instances of inadmissible hearsay; did not object to testimony which vouched for the complainant's credibility; did not object to inadmissible testimony about Mr. Harris' post-*Miranda* silence; and did not call a physician at trial because he did not have the funds to pay him.
>
> III. It was reversible error for the prosecutor to appeal to the sympathy of the jurors by appealing to their emotions regarding sexual assaults against children, by denigrating Mr. Harris, and by arguing "evidence" not of record at trial; and defense counsel's failure to object constitutes ineffective assistance of counsel.
>
> IV. Mr. Harris was denied his state and federal right to the effective assistance of counsel on appeal due to appellate counsel's failure to follow through in his appellate strategy by failing to file an application for leave to appeal in the Michigan Supreme Court and by structuring the motion for relief from judgment in such a way that meaningful review in a federal writ of habeas corpus petition has been denied.

Respondent has now moved for summary judgment, claiming that petitioner's claims are procedurally defaulted.

## II. *DISCUSSION*

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sanders v. Freeman,* 221 F.3d 846, 851 (6th Cir.2000); *cert. den.* 531 U.S. 1014, 121 S.Ct. 571, 148 L.Ed.2d 489 (2000) (quoting Fed.R.Civ.Proc. 56(c)). To defeat a motion for summary judgment, the nonmoving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor. *Sanders,* 221 F.3d at 851. The summary judgment rule applies to habeas proceedings. *Hauck v. Mills,* 941 F.Supp. 683, 686–687 (M.D.Tenn.1996).

In their motion for summary judgment, respondent contends that petitioner's first claim is procedurally defaulted pursuant to M.C.R. 6.508(D)(3), because he failed to

establish cause and prejudice for failing to raise the claim on his appeal of right. Respondent contends that petitioner's second and third claims are procedurally defaulted because although they were raised in his appeal of right to the Michigan Court of Appeals, petitioner never sought leave to appeal with the Michigan Supreme Court after the Michigan Court of Appeals rejected his appeal by right. Petitioner claims that he can establish cause for his procedural default because of the ineffective assistance of appellate counsel.

■■■ When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson*, 501 U.S. 722, 750–751, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Bell v. Smith*, 114 F.Supp.2d 633, 638 (E.D.Mich.2000) (Gadola, J). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479–480, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Moreover, actual innocence,

which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir.1998).

■■■ Ineffective assistance of counsel may be cause for procedural default. *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. 2639; *Richardson v. Elo*, 974 F.Supp. 1100, 1104 (E.D.Mich.1997) (Gadola, J.). Not just any deficiency in counsel's performance will excuse a procedural default, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Attorney error that falls short of constitutional ineffective assistance of counsel does not constitute cause to excuse a procedural default. *Bruton v. Phillips*, 64 F.Supp.2d 669, 682–683 (E.D.Mich.1999) (Gadola, J.). If petitioner's ineffective assistance of appellate counsel claim lacks merit, it cannot constitute cause to excuse his default. *Sherrill v. Hargett*, 184 F.3d 1172, 1176 (10th Cir. 1999).

■■■ The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–397, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). An attorney's failure to present a nonmeritorious issue on appeal does not constitute ineffective assistance of counsel. *Daniel v. Overton*, 845 F.Supp. 1170, 1176 (E.D.Mich.1994) (Gadola, J.).

Petitioner first claims that the trial court erroneously excluded impeachment

evidence that was critical to his consent defense. Petitioner had been charged with five counts of first-degree criminal sexual conduct under a theory that petitioner had caused personal injury to the victim and force or coercion had been used to accomplish sexual penetration. Petitioner's defense was that the fourteen year old victim had consented to these acts. Had a consent defense been successful, it would have reduced the charge from a life offense of first-degree criminal sexual conduct to the lesser offense of third-degree criminal sexual conduct M.C.L.A. 750.520d; M.S.A. 28.788(4).

In the present case, petitioner sought to impeach the victim's testimony that petitioner had forcibly sodomized him by asking Detective Thomas Albin of the Clinton Township Police about statements that the victim had made during his interview which petitioner claims would have impeached the victim's credibility and shown that the sexual contact between the two had been consensual. The victim had told Detective Albin that he had been scared to tell his parents about the assaults because he was afraid that he would get into trouble and his family and friends would think that he was "gay", i.e. a homosexual. The victim also told Detective Albin that he had been raised [Roman] Catholic and was afraid that he would go to hell for what he did.[2] Although the trial court initially permitted petitioner's attorney to cross-examine Detective Albin about these statements, he later sustained the prosecutor's objection and ordered them stricken from the record. (T., III, pp. 126–129). Petitioner contends that the trial court's ruling also prevented counsel from questioning Detective Albin about other statements made by the victim that would show that the sexual contact between the victim and petitioner had been consensual. These

would have included statements by the victim that after one assault, petitioner was concerned about the victim bleeding and asked him if he wanted to go to the hospital. The victim also told Detective Albin that petitioner gave him money, kissed and hugged him, and called him his "boy".

The test for determining whether an erroneous evidentiary ruling by a state court denied a habeas petitioner a fair trial centers on whether the excluded evidence would have created a reasonable doubt that did not otherwise exist. *McLean v. McGinnis*, 29 F.Supp.2d 83, 93 (E.D.N.Y. 1998). In the present case, although the trial court did not allow defense counsel to impeach the victim's testimony with these two statements, there was other evidence presented at trial which could have been used to support petitioner's defense that the sexual intercourse in this case had been consensual. The victim at trial testified that he had spent a lot of time with petitioner "just like time I spend with a normal friend". The victim also admitted that petitioner was "like a best friend". (T. I, p. 215). The victim testified that he received football cards and gifts from petitioner. The victim also testified that he and petitioner had an agreement that petitioner would give him money if he received good grades but would spank him if he received poor grades from school. (*Id.* at p. 222). The victim testified that he agreed to this spanking arrangement because he enjoyed receiving money from petitioner. (*Id.* at p. 272). He also acknowledged telling petitioner that he loved him. (*Id.* at pp. 295–296). Furthermore, the victim admitted that he did not tell anyone about his agreement with petitioner because he did not want anyone to think that he was "gay". (TII A, pp. 18, 28–29).

---

**2.** Detective Albin's report is attached as Petitioner's Appendix E.

Petitioner presented a number of witnesses to corroborate his consent defense. George Kallas was a neighbor of petitioner's and testified that he frequently saw a twelve or thirteen year old male known to him as "Dum–Dum" come to his house with petitioner. (T. IV, pp. 82–84). Kallas' daughter, Dina Kallas, indicated that the victim was this young man who had been identified by her father as being "Dum–Dum." She indicated that petitioner and the victim were friends. She also indicated that in the last week of April, 1992, which was around the time that the last sexual assault occurred in this case, she observed petitioner and the victim leaving her house and they appeared normal. (*Id.* at pp. 99–103). Petitioner's mother Geraldine Harris testified that after petitioner's arrest on April 29, 1992, she would see the victim come by her house often, laughing and taunting. When she saw the victim on June 20 or 22, 1992, his appearance was good. (T. V, pp. 40–41).

Petitioner testified on his behalf, although his testimony was at times inconsistent with a consent defense. Petitioner first indicated that he did not "willingly" put his penis into the victim's anus. (T. VI, p. 8). Petitioner claimed that he did not use force or coercion on the victim, although he added that "I didn't want it to happen myself". (*Id.* at p. 13). At some point, however, petitioner claimed that he did not insert his penis into complainant; it was actually his friend named Alberto Albaid. (*Id.* at p. 32). Petitioner elaborated on this by claiming that the spirit of his companion "Al" had actually had sex with the victim and had possessed petitioner's body in order to sodomize the complainant. (*Id.* at pp. 41–42; 57–59; 73). However, petitioner also insisted that no force was used on the victim and that the victim "wanted it" [the sex]. (*Id.* at p. 43).

In the present case, there was ample evidence presented, even excluding the statements made by the victim to Detective Albin, to impeach the victim's credibility that petitioner had forced him to engage in anal intercourse. Moreover, there was other evidence besides the victim's testimony to establish that he had been forced to engage in anal intercourse with petitioner. The victim's father testified that when he asked his son on April 29, 1992 what was wrong, his son informed him that petitioner had molested him and began to cry. (T. II A, p. 245). Dr. Joseph Flynn of the Mt. Clemens General Hospital performed a medical examination on the fourteen year old victim later that day and indicated that he believed that the victim's anus had been traumatized because it had unusual tenderness and was red. (T. III, p. 12). Dr. Flynn indicated that he found the victim's medical examination to be consistent with the victim having been sexually assaulted. (*Id.* at pp. 34–37).

In light of the ample evidence that had been presented in support of petitioner's consent defense, as well as the fact that there was evidence which supported the victim's claim that petitioner had forced him to have sexual intercourse, the Court concludes that the exclusion of this evidence did not deprive petitioner of a fair trial in that the excluded evidence does not raise a reasonable doubt that does not otherwise exist. Because the excluded evidence claim lacked merit, petitioner is unable to show that he was prejudiced by his appellate counsel's failure to raise the issue in his appeal of right. *United States ex. rel. Kurena v. Thieret*, 659 F.Supp. 1165, 1176 (N.D.Ill.1987) (habeas petitioner not prejudiced, so as to be denied the effective assistance of counsel, by appellate counsel's failure to raise an improperly excluded evidence claim on direct appeal,

where the unasserted claim was found to be lacking in merit in his habeas corpus proceeding). Petitioner is unable to show that appellate counsel's failure to raise this issue in his appeal of right was ineffective, either to excuse his procedural default or in support of his independent ineffective assistance of appellate counsel claim.

 Petitioner's second and third claims involving the ineffective assistance of trial counsel and prosecutorial misconduct were presented on his appeal of right to the Michigan Court of Appeals but were never raised before the Michigan Supreme Court in any application for leave to appeal. A habeas petitioner procedurally defaults a claim if he or she fails to raise it in an application for discretionary review with the state's highest court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Rodriguez v. Scillia,* 193 F.3d 913, 917 (7th Cir.1999); *Hull v. Kyler,* 190 F.3d 88, 97 (3rd Cir. 1999). A claim raised in the state court of appeals but not in the state supreme court cannot be considered in federal habeas. *See Morales v. Coyle,* 98 F.Supp.2d 849, 862 (N.D.Ohio 2000). By failing to seek discretionary review of these claims in the Michigan Supreme Court, petitioner has procedurally defaulted these claims.

 Petitioner attempts to establish cause to excuse this procedural default by claiming that his appellate counsel was ineffective for not following through in his appellate strategy by failing to file an application for leave to appeal in the Michigan Supreme Court. A criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals. *Wainwright v. Torna,* 455 U.S. 586, 587, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982). "The right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539, (1987).

Because there is no constitutional right to the effective assistance of counsel on a discretionary appeal, petitioner cannot claim that counsel was ineffective for failing to file the application for leave to appeal. *Wainwright v. Torna,* 455 U.S. at 587–588, 102 S.Ct. 1300; *Cosme v. Elo,* 2000 WL 246592, *6 (E.D.Mich. February 4, 2000) (Cohn, J.).

In proceedings in which a petitioner does not have a constitutional right to counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *See Coleman,* 501 U.S. at 752–53, 111 S.Ct. 2546. Because petitioner had no constitutional right to the effective assistance of counsel in filing his application for leave to appeal with the Michigan Supreme Court, counsel's failure to file an application for leave to appeal on petitioner's behalf does not establish "cause" required to overcome the procedural default of these remaining two claims. *See Anderson v. Cowan,* 227 F.3d 893, 901 (7th Cir.2000). Petitioner is unable to establish that he was deprived of the effective assistance of appellate counsel for failing to file an application for leave to appeal to the Michigan Supreme Court, either to excuse his procedural default or in support of his independent ineffective assistance of appellate counsel claim. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue on these two remaining claims.

 Finally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his three claims as a ground for a writ of habeas corpus in spite of the procedural default. The victim's statements to Detective Albin are merely impeaching evidence and are thus not sufficient to justify invok-

ing the fundamental miscarriage of injustice exception to the procedural default rule. *See Clayton v. Gibson,* 199 F.3d 1162, 1180 (10th Cir.1999); *cert. den.* 531 U.S. 838, 121 S.Ct. 100, 148 L.Ed.2d 59 (2000). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review these claims on the merits. *Welch v. Burke,* 49 F.Supp.2d 992, 1007 (E.D.Mich.1999) (Cleland, J.).

■■■■■ Accordingly, the Court grants the motion for summary judgment. The Court will also deny petitioner a certificate of appealability. When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* Because a plain procedural bar was present in this case, no further appeal is warranted.

### III. *ORDER*

Based upon the foregoing, petitioner's claims are procedurally defaulted.

IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**